SCHOTT, Judge.
This suit is by lessor against lessee for unpaid rent. On October 31, 1979, the parties confected a written lease on an apartment for a seven month term ending May 31, 1980. Defendant-lessee vacated the premises at the beginning of April leaving the rent unpaid for the final two months. From a judgment in favor of plain tiff-lessor the defendant has appealed. The issue is whether parol evidence is admissible and sufficient to prove oral amendments subsequent to the written lease which shortened its term or terminated the lease two months early.
The evidence at the trial consisted of the testimony of plaintiff-lessor Dean Allison, defendant-lessee Louis McFaul and plaintiff’s employee Nellie Payne. Summary of that testimony follows:
Dean P. Allison: When he purchased the property on October 31 McFaul was already occupying the premises as a tenant of the prior owner. On the day of his acquisition he was contacted by McFaul who had heard about the purchase and was anxious to negotiate a satisfactory monthly rent and to limit his occupancy to seven months from that date. Allison agreed to accommodate McFaul in this connection and drew the written lease accordingly. McFaul would not sign the lease at that time but insisted on taking it to his lawyer but returned with the signed lease and the first month’s rent either that day or the following day. He has about 35 employees who have dealings with his tenants but whose authority is limited to apartments whose rent is less than $300. Asked whether he had any other contacts with McFaul outside of the ones discussed, Allison said that “he could have called me and I could have spoken to him on other occasions. I believe I said I remem *1114 bered speaking to him more than once and I remember seeing him more than once, but I can’t say exactly what our conversation as to the exact statement.” Asked if he had any conversation with McFaul about his moving out before May, 1980, Allison said: “No. If anything, he asked me, which is company policy and I said if you want to move out sooner than May, what I would have told him would be the only way you could move out is if we find a tenant that would sublease your apartment, agree to your terms, and pro rate the rental. You find the tenant and pay for the cost of advertising and that’s it.” Notwithstanding this testimony Allison stated that he never spoke to McFaul again after the lease was signed, never had any notice that he was going to move out and found out for the first time when he brought the keys into the office in April.
Louis McFaul: He began occupying this apartment in May, 1978, and when he learned of the sale of the building he contacted Allison to determine his plans. Although he was initially told that the rent would be raised from the $280 he had been paying to $450 per month, Allison agreed to a lower rent at the beginning with a sliding scale up to $400 per month for April and May and with a term of seven months. The lease was signed on this basis, but after this was done Allison told McFaul that if he wanted to move because of the higher rent before the end of the term he should simply advise the office, pay for the ad for a new tenant and leave. Allison seemed enthusiastic about this arrangement because if McFaul moved this would enable Allison to get more rent. In February McFaul called Nell Payne at Allison’s office to advise that he would be leaving the premises at the end of March. At the end of February when he paid his rent he handed a written notice to Nell Payne saying he intended to vacate the premises at the end of March. As time went on McFaul became concerned because there was never a phone call from anyone to see the apartment and he saw no ad in the paper or a “for rent” sign outside of the premises, so he phoned Payne to discuss it. He advised her of the agreement he had with Allison about leaving early with the understanding that he would pay for the newspaper ad and, “She said fine.” When he brought the keys into the office and gave them to Payne on April 3 she said that Allison said don’t worry about paying for the ad. Several days later he heard from Payne that she was closing out the files on the property and she asked what his new address was. “And the next thing I heard I’ve got a lawsuit.” He was told that Payne was the office manager for Allison.
Nellie Payne: She is Allison’s personal secretary and saw McFaul once when he was talking with Allison and the other time when he turned in his key. When asked whether she spoke to McFaul on the telephone she answered “He called and said he was moving and I said all right and then he said he would turn in his key on, I believe, April 3, you know, and I said okay.” After McFaul vacated the premises they were advertised for two months before being rented to a new tenant in June for $450 per month. She did not recall the note he attached to the March check confirming the telephone conversation in which McFaul stated he was going to move out at the end of March.
On motion of defendant for written reasons for judgment, the trial judge (19 days after trial) gave the following reasons:
“As a general rule, parol evidence is inadmissible to vary, modify, explain or contradict a written agreement. The terms of the written agreement of lease sued on herein are clear and explicit, and contain no ambiguous provisions.
Over the timely objection by Plaintiff, parol evidence was permitted to be introduced by Defendant concerning an oral agreement not included in the written agreement of lease, but Defendant has failed to sustain such defense, and consequently there must be judgment in favor of Plaintiffs as prayed.”
As we understand these reasons the trial judge found that the lease was unambiguous so that the parol evidence offered was not admissible in that connection. Further *1115 more, he found that the parol evidence was insufficient to establish some agreement which the parties did not include in the written agreement. On appeal plaintiff contends that all of the parol evidence was inadmissible because it pertained to conversations which preceded the confection of the written lease. As a matter of law this position is correct under LSA C.C. Art. 2276, Piliawsky v. Colar, 112 So.2d 730 (La.App. Orl. 1959). This principle, however, does not exclude conversations which took place after the confection of the lease and had the effect of orally amending the lease, Christ v. Christ, 251 So.2d 197 (La.App. 3rd Cir. 1971). Because the trial judge did not address this issue with respect to the alleged conversation between Allison and McFaul immediately following the signing of the lease or the transaction between McFaul and Payne in February and March, the manifest error doctrine has no application on this appeal.
McFaul’s testimony of what happened following the signing of the lease is not contradicted in essence by Allison because when asked about any conversations with McFaul he answered that he could not remember. More importantly, however, McFaul’s testimony that he informed Allison’s manager or secretary (who surely had apparent authority to bind Allison) of his intentions and got no objection, was uncon-tradicted by Payne.
We are satisfied that the trial judge did not address the issue of oral modification of the written lease or termination on Allison’s part by Payne, and we find that as a fact the lease was terminated by agreement between the parties as of April 1, 1980.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendant, Louis W. McFaul, and against plaintiffs, Dean P. Allison and Arthur S. Bernstein, dismissing their suit at their cost, including the cost of this appeal.
REVERSED.